**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BENJAMIN RAMEY, LOURDES BURGOS, and TYLER THOMSON, *on behalf of themselves and all others similarly situated*, Plaintiffs, | ) ) ) ) ) | |
| v. | ) ) | No. 2:20-cv-00753-RJC |
| THE PENNSYLVANIA STATE UNIVERSITY, | ) ) ) | CLASS ACTION |
| Defendant. | ) ) ) ) | |

_____

**PLAINTIFFS' RESPONSE IN OPPOSITION
<u>TO DEFENDANT'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................................1

II.     LEGAL STANDARDS ........................................................................................2

III.    ARGUMENT.......................................................................................................3

        A.  Plaintiffs Stated a Claim for Breach of Contract ...................................3

        B.  The Court Should Not Reach the Same Outcome as the *Pitt*, *Penn*, or *Temple* Decisions ...........................................................................................7

        C.  The SFRA Does Not Govern Plaintiffs' Breach of Contract Claims ................9

            1.    The SFRA is Not an Enforceable Contract.......................................9

            2.    Even If the SFRA Is Enforceable, Plaintiffs' Breach of Contract Claims Are Outside the Scope of the SFRA ......................................12

                  i.    At the Very Least, the SFRA Does Not Bar Plaintiffs' Breach of Contract Claims related to Payment of Mandatory Fees SFRA ....13

        D.  Plaintiffs' Claims Are Not "Educational Malpractice" Claims and Do Not Require Inquiry into the Quality of Plaintiffs' Education ................................16

        E.  Plaintiffs Stated A Claim in the Alternative for Unjust Enrichment................18

        F.  No Forum Selection Clause Applies .................................................................19

IV.     CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*American Airlines, Inc. v. Wolens*,
   513 U.S. 219 (1995) ................................................................................................ 10

*AmerisourceBergen Drug Corp. v. Allscripts Healthcare, LLC*,
   2011 WL 3241356 (E.D. Pa. July 29, 2011) ......................................................... 18

*Ansari v. New York University*,
   1997 WL 257473 (S.D.N.Y. 1997) ........................................................................ 17

*Arredono v. Univ. of La Verne*,
   2021 WL 1588995 (C.D. Cal. Apr. 21, 2021) ......................................................... 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................ 2

*Bahrani v. Northeastern Univ.*,
   2020 WL 7774292 (D. Mass. Dec. 30, 2020) .......................................................... 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................ 2

*Bergeron v. Rochester Inst. of Tech.*,,
   2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020) ................................................. 6, 15

*Boehm v. Univ. of Pa. Sch. of Veterinary*,
   573 A.2d 575 (1990) .............................................................................................. 14

*Botts v. Johns Hopkins Univ.*,
   2021 WL 1561520 (D. Md. Apr. 21, 2021) ............................................................. 6

*Bradshaw v. Pennsylvania State Univ.*,
   2011 WL 1288681 (E.D. Pa. Apr. 5, 2011) ........................................................... 14

*Cavaliere v. Duff's Bus. Inst.*,
   605 A.2d 397 (Pa. Super. Ct. 1992) ................................................................. 16, 17

*CenCor, Inc. v. Tolman*,
   868 P.2d 396 (Colo. 1994) .................................................................................... 17

*Chong v. Northeastern Univ.*,
   2020 WL 7338499 (D. Mass. Dec. 14, 2020) .......................................................... 6

*Cohn v. Pennsylvania State Univ.*,
   2020 WL 738496 (E.D. Pa. Feb. 12, 2020) .......................................................... 14

*Crescent Int'l, Inc. v. Avatar Communities, Inc.*,
   857 F.2d 943 (3d Cir. 1988) .................................................................................. 20

*Doe v. Bradley Univ.*,
   2020 WL 7634159 (C.D. Ill. Dec. 22, 2020) .......................................................... 6

*Doe v. Emory Univ.*,
   2021 WL 358391 (N.D. Ga. Jan. 22, 2021) ............................................................ 6

*Espejo v. Cornell University*,
  2021 WL 810159 (N.D.N.Y. Mar. 3, 2021) ............................................................... 6

*Ford v. Rensselaer Polytechnic Institute*,
  2020 WL 7389155 (N.D.N.Y. Dec. 16, 2020) ............................................. 6, 11, 15

*Gati v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*,
  91 A.3d 723 (Pa. Super. Ct. 2014*)*.................................................................. 3, 8

*Geisinger Clinic v. Di Cuccio*,
  606 A.2d 509 (Pa. Super. Ct. 1992).......................................................................... 9

*Gibson v. Lynn Univ.*,
  2020 WL 7024463 (S.D. Fla. Nov. 23, 2020) ......................................................... 6

*Great Northern Ins. Co. v. ADT Sec. Svcs., Inc.*,
  517 F. Supp. 2d. 723 (W.D. Pa. 2007) .................................................................... 3

*Hiatt v. Brigham Young Univ.*,
  2021 WL 66298 (D. Utah Jan. 7, 2021) .................................................................. 6

*Hickey v. Univ. of Pittsburgh*,
  2021 WL 1630579 (W.D. Pa. Apr. 27, 2021) ................................................ Passim

*Hopkins v. GNC Franchising, Inc.*,
  288 F. App'x 871 (3d Cir. 2008).............................................................................. 3

*In re Rotavirus Vaccines Antitrust Litig.*,
  2020 WL 6828123,n.3 (E.D. Pa. Nov. 20, 2020) ................................................. 15

*In re: Boston University Covid-19 Refund Litigation*,
  2021 WL 66443 (D. Mass. Jan. 7, 2021).................................................................. 6

*In Re: University of Miami Covid-19 Tuition and Fee Refund Litigation*,
  2021 WL 1251139 (S.D. Fla. Mar. 5, 2021) ........................................... 6, 10, 12, 20

*Ingrassia Const. Co., Inc. v. Walsh*,
  486 A.2d 478 (Pa. Super. Ct. 1984)......................................................................... 3

*Kashmiri v. Regents of Univ. of Cal.*,
  156 Cal. App. 4th 809 (Cal. Ct. App. 2007)........................................................... 17

*Lackner v. Glosser*,
  892 A.2d 21 (Pa. Super. Ct. 2006).................................................................... 9, 10

*Liss & Marion, P.C. v. Recordex Acquisition Corp.*,
  983 A.2d 652 (Pa. 2009)........................................................................................... 3

*Little v. Grand Canyon Univ.*,
  2021 WL 308940 (D. Ariz. Jan 29, 2021) .............................................................. 6

*Lombardo v. Gasparini Excavating Co.*,
  123 A.2d 663 (Pa. 1956).......................................................................................... 10

*Malone v. Acad. of Ct. Reporting*,
  582 N.E.2d 54 (Ohio Ct. App. 1990) ...................................................................... 17

*McCarthy v. Loyola Marymount Univ.*,
   2021 WL 268242 (C.D. Cal. Jan. 8, 2021) ........................................................... 6

*McTernan v. City of York*,
   577 F.3d 521 (3d Cir. 2009) ................................................................................ 2

*MDL Capital Management, Inc. v. Federal Ins. Co.*,
   274 F. App'x 169 (3d Cir. 2008) ....................................................................... 11

*Metzner v. Quinnipiac Univ.*,
   2021 WL 1146922 (D. Conn. Mar. 25, 2021) ...................................................... 6

*Morgan Trailer Mfg. Co. v. Hydraroll, Ltd.*,
   759 A.2d 926 (Pa. Super. Ct. 2000) ................................................................... 20

*Nguyen v. Stephens Institute*,
   2021 WL 1186341 (N.D. Cal. Mar. 30, 2021) ..................................................... 6

*Omori v. Brandeis Univ.*,
   2021 WL 1408115 (D. Mass. Apr. 13, 2021) ....................................................... 6

*Onyx Oils & Resins, Inc. v. Moss*,
   80 A.2d 815 (Pa. 1951) ................................................................................. 11, 12

*Paladino v. Adelphi Univ.*,
   89 A.D.2d 85 (N.Y. App. Div. 1982) ................................................................. 17

*Patel v. Univ. of Vermont*,
   2021 WL 1049980 (D. Vt. Mar. 15, 2021) ........................................................... 6

*Pennsylvania State Univ. v. Derry Twp. Sch. Dist.*,
   731 A.2d 1272 (Pa. 1999) ................................................................................... 14

*Phillips v. Cty. of Allegheny*,
   515 F.3d 224 (3d Cir. 2008) ................................................................................ 2

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*,
   967 F.3d 218 (3d Cir. 2020) ................................................................................ 3

*Premier Payments Online, Inc. v. Payment Sys. Worldwide*,
   848 F. Supp. 2d 513 (E.D. Pa. 2012) ................................................................. 18

*Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*,
   2021 WL 140708 (M.D. Fla. Jan. 14, 2021) .............................................. 6, 11, 15

*Rodrigues v. Boston Coll.*,
   2021 WL 1439784 (D. Mass. Apr. 15, 2021) ....................................................... 6

*Rosado v. Barry Univ.*,
   2020 WL 6438684 (S.D. Fla. Oct. 30, 2020) ....................................................... 6

*Ross v. Creighton University*,
   957 F.2d 410 (7th Cir. 1992) ............................................................................. 17

*Ross v. Pennsylvania State Univ.*,
   445 F. Supp. 147 (M.D. Pa. 1978) ....................................................................... 4

*Roy v. Pennsylvania State University*,
    568 A.2d 751 (Pa. Commw. Ct. 1990) ................................................................... 14

*Ryan v. Temple Univ.*,
    2021 WL 1581563 (E.D. Pa. Apr. 22, 2021) ................................................. 6, 7, 8

*Salerno v. Florida S. Coll.*,
    488 F. Supp. 3d 1211 (M.D. Fla. 2020) ........................................................... 6, 19

*Saroya v. Univ. of the Pacific*,
    2020 WL 7013598 (N.D. Cal. Nov. 27, 2020) ......................................................... 6

*Smith v. Univ. of Penn.*,
    2021 WL 1539493 (E.D. Pa. Apr. 20, 2021) ................................................... Passim

*Tran v. State Sys. Of Higher Educ.*,
    986 A.2d 179 (Pa. Commw. Ct. 2009) ................................................................... 14

*Vantage Learning (USA), LLC v. Edgenuity, Inc.*,
    246 F. Supp. 3d 1097 (E.D. Pa. 2017) ........................................................... 18, 19

*Villarreal v. Art Institute of Houston, Inc.*,
    20 S.W.3d 792 (Tex. Ct. App. 2000) ............................................................. 12, 20

*Zumbrun v. Univ. of S. Cal.*,
    23 Cal. App. 3d 1 (Cal. Ct. App. 1972) .......................................................... 17, 19

**Rules**

Fed. R. Civ. P. 8(a)(3) .................................................................................................. 18

Fed. R. Civ. P. 8(d)(3) .................................................................................................. 18

Rule 8(d)(2) .................................................................................................................. 18

## I.      INTRODUCTION

Covid-19 is an ongoing global pandemic that impacted every aspect of our national economy, significantly impeding the exchange of goods and services. When things came to a sudden halt in the spring of 2020, many consumers who had pre-paid for various goods and services were told that what they had purchased either: 1) could not be delivered at all; 2) would be delivered at some unknown point in the future; or 3) would be delivered in a completely different form or manner than what had been contractually promised.  This is precisely what happened in the market of higher education, including at Penn State University.  College students all over America—who in many instances incurred substantial debt to pay their tuition and campus activity fees for the spring 2020 semester—were suddenly told to leave their campuses and go home to participate in their classes in an online format only, foregoing their expected (and chosen) format of live instruction and an on-campus experience.

This case is about who must bear the ultimate cost for the inability of a school to deliver the services which it promised, and for which it received payment.  It is not about whether these pre-paid, but undelivered, services were promised at all, as Defendant would have this Court conclude. Plaintiffs allege they chose and paid for a particular bundle of services inclusive of in-person, on-campus, live education. This choice cost Plaintiffs more than the alternative of online education at Penn State's World Campus precisely because the two offerings are defined and differentiated by whether, in exchange, Penn State would provide the student an in-person, on-campus education. Despite Plaintiffs' specific choice, they did not receive all that they paid for.

Penn State relies on a document titled the Student Financial Responsibility Agreement ("SFRA"), arguing that it forecloses Plaintiffs' breach of contract claims because Penn State did not therein promise to provide in-person education. These arguments fail because the SFRA is not

1

a contract, but instead a one-sided acknowledgment submitted by the student which contains no promises on the part of the University. The University's failure to provide consideration under the SFRA or agree to be bound to it demonstrates that it does not reflect the parties' entire agreement and cannot defeat Plaintiffs' breach of contract claims, especially in light of Plaintiffs' specific allegations that they chose in-person education *instead of* the clearly delineated alternative of Penn State's online program. The University's additional argument that Plaintiffs' allegations are in the nature of "educational malpractice" has been rejected by numerous courts evaluating similar claims. Plaintiffs' additional claims for unjust enrichment and conversion should be read as claims in the alternative, and should not be dismissed unless the Court recognizes the existence of a contract between Plaintiffs and the University governing this subject matter.

## II.    LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss for failure to state a claim must be denied where "a complaint [] contain[s] sufficient factual matter, accepted as true, [that] 'state[s] a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). The court must

"accept all factual allegations in the complaint as true and draw all reasonable inferences in the "[nonmoving party]'s favor." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 229 (3d Cir. 2020).

## III.   ARGUMENT

### A.   Plaintiffs Stated a Claim for Breach of Contract

To bring a claim for breach of contract, "Pennsylvania law requires that a plaintiff allege: '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages.'" *Hopkins v. GNC Franchising, Inc.*, 288 F. App'x 871, 873 (3d Cir. 2008). A contract may be express, if the parties specifically express the terms of their agreement orally or in writing, or a contract may be implied. *Great Northern Ins. Co. v. ADT Sec. Svcs., Inc.*, 517 F. Supp. 2d 723, 736 (W.D. Pa. 2007). "A contract implied in fact is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from acts in the light of the surrounding circumstances." *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 659 (Pa. 2009) (citation and internal quotation marks omitted). "A contract implied in fact has the same legal effect as any other contract. It differs from an express contract only in the manner of its formation." *Ingrassia Const. Co., Inc. v. Walsh*, 486 A.2d 478, 483 n.7 (Pa. Super. Ct. 1984). Ultimately, the finding of whether a contract exists should be left to a reasonable jury based on the evidence admitted. *Ingrassia*, 486 A.2d at 483.

The "essence of the bargain between student and university" is the student's "reasonable expectation based on statements of policy by [the university] and the experience of former students. …" *Gati v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*, 91 A.3d 723, 731 (Pa.

Super. Ct. 2014*). This takes into consideration the prior "practice of the University." *Ross v. Pennsylvania State Univ.*, 445 F. Supp. 147, 153 (M.D. Pa. 1978).

Plaintiffs' factual allegations are sufficient at this stage to state a plausible claim, at a minimum, under a breach of implied contract theory. Plaintiffs alleged that Defendant offers its students two separate and distinct options: (i) in-person and on-campus education and experiences at one of Penn State's twenty campuses; or, (ii) online-only education through World Campus. Compl. ¶ 20.[1] Defendant proudly promotes its clubs, organizations, intramural sports, club teams, varsity athletics, improv groups, music ensembles, fraternities and sororities—activities that are traditionally provided exclusively only on campus. Compl. ¶ 39. Defendant proclaims that its main campus, "University Park is ***home to*** a diverse population of about 46,000 undergraduate students." *Id.* (emphasis added). And that its students "enjoy passing iconic buildings like Old Main daily, while also taking advantage of amenities in new facilities like Information Sciences and Technology Building or the Life Sciences Building." *Id.* Defendant promotes the physical characteristics of its other campuses as well, like Penn State Behrend, which is "close to Presque Isle State Park" and has "[n]ew facilities," including "an indoor athletics and recreation center, nineteen residence halls, a planetarium, and chapel." *Id.* Defendant also acknowledges that a student's choice of a specific campus to attend involves a variety of factors, including proximity to home, cost, the "particular campus environment," class sizes, or particular sports. *Id.* ¶ 40.

Upon choosing the in-person and on-campus education and experiences, Penn State demanded, and students pre-paid, between $8,708 and $21,648 for the Spring 2020 semester. Compl. ¶ 18. In contrast, students who chose Penn State's online World Campus were charged less, approximately $6,994 to $7,549, for the Spring 2020 semester. Compl. ¶¶ 19, 21. Plaintiffs

---

[1] All references to "Compl." or "the Complaint" are to Plaintiffs' First Amended Complaint, ECF No. 12.

and Class members *did not choose online education*, and instead specifically chose to enroll in Defendant's in-person, on-campus program. Compl. ¶¶ 22, 38. In exchange, Penn State charged, and Plaintiffs paid, the higher tuition and fees for enrolling in the in-person and on-campus educational program for the entirety of the Spring 2020 semester. Compl. ¶¶ 23, 24.

The failure of Penn State to provide these services is undisputed. Through a string of announcements starting on March 11, 2020, Defendant transitioned to remote online learning, and made it clear that Plaintiffs and members of the Class could *no longer* call campus their home and could no longer use the physical facilities and services located there. Compl. ¶¶ 27–32, 46. Members of the Class demanded the partial/pro-rated return of the tuition and fees they paid for in-person education and on-campus activities. Compl. ¶ 25. Despite all of this, Penn State continues to retain all tuition and fees paid for in-person and on-campus education and services. Compl. ¶¶ 26, 35.

These allegations permit the Court to draw a reasonable inference that a contract existed between Plaintiffs and Defendant which included at least an implied promise by Penn State to provide in-person, on-campus education, services, and facilities. Plaintiffs could have enrolled in Defendant's online program from the outset of their education or the spring 2020 semester, but they specifically chose not to and instead paid more. They paid more precisely because the extra tuition and fees entitled them to *receive* more in exchange from Penn State than an online-only education through the World Campus program. Consistent with this agreement, for the first half of the spring 2020 semester, Defendant *did* provide in-person and on-campus education and experiences. Penn State did not provide these services gratuitously; it provided them because students paid the higher in-person tuition rates and the Mandatory Fees to receive them.

In considering similar motions to dismiss in similar cases, a legion of federal courts around the country have found that students' breach of contract claims satisfy the pleading standards of Rule 12, *Twombly*, and *Iqbal*.[2] This Court should reach the same results as these cases, and not the three recent opinions from district courts in Pennsylvania heavily relied upon by Defendant.[3] As explained in more detail below, the interpretations of Pennsylvania law and resulting conclusions in the *Pitt*, *Penn*, and *Temple* opinions are inconsistent, and in any event, the cases are factually distinguishable from this one. Pennsylvania law does not materially differ from the law of other states with respect to the relationship between a university and its students, and Defendant has not raised any valid grounds for dismissal at this stage.

---

[2] *Doe v. Emory Univ.*, Case No. 1:20-cv-2002, 2021 WL 358391, at *6 (N.D. Ga. Jan. 22, 2021); *Rosado v. Barry Univ.*, No. 1:20-cv-21813, 2020 WL 6438684, at *3–4 (S.D. Fla. Oct. 30, 2020) ("This is kind of like purchasing a Cadillac at full price and receiving an Oldsmobile."); *Salerno v. Florida S. Coll.,* 488 F. Supp. 3d 1211, 1217–18 (M.D. Fla. 2020) ("[T]his is not a typical contract situation where there is an express document with delineated terms that a plaintiff can reference. It is more nebulous."); *Saroya v. Univ. of the Pacific*, No. 5:20-cv-03196, 2020 WL 7013598, at *5–6 (N.D. Cal. Nov. 27, 2020); *Gibson v. Lynn Univ.*, No. 20-CIV-81173, 2020 WL 7024463, at *3–4 (S.D. Fla. Nov. 23, 2020); *Chong v. Northeastern Univ.*, No. 20-10844, 2020 WL 7338499, at *3 (D. Mass. Dec. 14, 2020); *Ford v. Rensselaer Polytechnic Institute*, No. 1:20-cv-00470, 2020 WL 7389155, at *3–7 (N.D.N.Y. Dec. 16, 2020); *Doe v. Bradley Univ.*, No. 20-1264, 2020 WL 7634159, at *2–3 (C.D. Ill. Dec. 22, 2020); *Bahrani v. Northeastern Univ.*, No. 20-cv-10946, 2020 WL 7774292, at *2–3 (D. Mass. Dec. 30, 2020); *Bergeron v. Rochester Inst. of Tech.*, No. 20-cv-6283, 2020 WL 7486682, at *8 (W.D.N.Y. Dec. 18, 2020); *Hiatt v. Brigham Young Univ.*, No. 1:20-cv-00100-TS, 2021 WL 66298, at *4 (D. Utah Jan. 7, 2021); *Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*, No. 6:20-cv-927, 2021 WL 140708, at *5–6 (M.D. Fla. Jan. 14, 2021); *In re: Boston University Covid-19 Refund Litigation*, No. 20-10827, 2021 WL 66443, at *2 (D. Mass. Jan. 7, 2021); *Little v. Grand Canyon Univ.*, No. 20-cv-00795, 2021 WL 308940, at *3–4 (D. Ariz. Jan 29, 2021); *McCarthy v. Loyola Marymount Univ.*, No. 2:20-cv-04668, 2021 WL 268242, at *4 (C.D. Cal. Jan. 8, 2021) ("the semester was well underway with class instruction inside a classroom with students appearing before an instructor. Plaintiff already had signed up for this instruction, and she was in the midst of the instruction for which she reasonably assumed she had bargained. At a minimum, Plaintiff's allegations are sufficient to establish an implied contract."); *Espejo v. Cornell University*, No. 3:20-cv-467, 2021 WL 810159, at *4–6 (N.D.N.Y. Mar. 3, 2021); *In Re: University of Miami Covid-19 Tuition and Fee Refund Litigation*, No. 0:20-cv-60851, 2021 WL 1251139, at *4–6 (S.D. Fla. Mar. 5, 2021); *Patel v. Univ. of Vermont*, No. 20-cv-00061, 2021 WL 1049980, at *4–6 (D. Vt. Mar. 15, 2021); *Metzner v. Quinnipiac Univ.*, No. 20-cv-00784, 2021 WL 1146922, at *9–10 (D. Conn. Mar. 25, 2021) (finding website's touting of physical campus, price difference between online and in-person programs, and parties' course of conduct allowed inference of implicit agreement for in-campus instruction); *Omori v. Brandeis Univ.*, No. 20-cv-11021, 2021 WL 1408115, at *2–4 (D. Mass. Apr. 13, 2021); *Rodrigues v. Boston Coll.*, No. 20-cv-11662, 2021 WL 1439784, at *1 (D. Mass. Apr. 15, 2021); *Botts v. Johns Hopkins Univ.*, No. 20-1335, 2021 WL 1561520, at *9–16 (D. Md. Apr. 21, 2021); *Arredono v. Univ. of La Verne*, No. 20-cv-7665, 2021 WL 1588995, at *2–3 (C.D. Cal. Apr. 21, 2021); *Nguyen v. Stephens Institute*, No. 20-cv-04195, 2021 WL 1186341, at *3–4 (N.D. Cal. Mar. 30, 2021).

[3] *Smith v. Univ. of Penn.*, Case No. 2:20-cv-02086-TJS, 2021 WL 1539493 (E.D. Pa. Apr. 20, 2021) ("*Penn*"); *Ryan v. Temple Univ.*, Case No. 5:20-cv-02164-JMG, 2021 WL 1581563 (E.D. Pa. Apr. 22, 2021) ("*Temple*"); *Hickey v. Univ. of Pittsburgh,* Case No. 2:20-cv-00690-WSS, 2021 WL 1630579 (W.D. Pa. Apr. 27, 2021) ("*Pitt*").

**B.     The Court Should Not Reach the Same Outcome as the *Pitt*, *Penn*, or *Temple* Decisions**

The *Pitt*, *Penn*, and *Temple* courts each came to similar conclusions, but through varying and at times contradictory interpretations and applications of Pennsylvania law. Like Defendant here, the universities in each of those cases argued that the parties' contractual agreements were confined to the short financial responsibility agreements students enter before enrolling. The *Penn* and *Pitt* courts both correctly held that these short agreements are not the parties' entire agreements. *Penn*, 2021 WL 1539493, at *5 ("Contrary to Penn's argument, the contract is comprised of more than the Financial Responsibility Statement and related financial policies contained in the PennBook."); *Pitt*, 2021 WL 1630579, at *4 (acknowledging that despite existence of Financial Responsibility Agreement, plaintiffs could allege an implied contract claim arising from other evidence). By contrast, the *Temple* court held squarely that the "Student Financial Responsibility Agreement is a fully integrated, binding contract," and that the plaintiffs' "implied contract theory is precluded by the existence of this express contract governing the payment of tuition and fees." *Temple*, 2021 WL 1581563, at *4.[4]

Where all three opinions go wrong is in their implicit assertion that students' remedies are limited by the express, *written* promises of the universities, to the extent there are any.  For instance, in *Pitt*, Judge Stickman held that while the agreements between students and universities include more than just "a single document," and may be implied from sources other than those that are "specifically expressed," the court then went on to conclude that none of the other materials identified by the plaintiffs included "identifiable and specific promises," thereby effectively conflating the standards for express agreements and implied agreements. *See Pitt*,

---

[4] The *Temple* court's interpretation of Pennsylvania law is incorrect, but also inapplicable here because the SFRA is not a fully integrated or binding contract, as explained below.

2021 WL 1630579, at *4–5. In *Penn*, the court held that the students' only available implied

contract claim related to the university's obligation to provide a degree if a student completes the

degree requirements, again limiting the students to only enforcing *written*, express promises for

in-person education. *Penn*, 2021 WL 1539493, *4–6 (stating, without citation, that "A cause of

action for breach of an implied promise is not cognizable under Pennsylvania law in the higher

education context.").

In *Temple*, the court went even further by holding that the short "Student Financial

Responsibility Agreement" was the *only* place plaintiffs could look to for *any* promises on the

part of the university, despite the obvious incompleteness of that agreement in the context of the

parties' relationship. *Temple*, 2021 WL 1581563, at *4. The court held that because that short

agreement did not expressly include a promise of in-person instruction, the plaintiffs' breach of

express *and* implied contract claims all failed. *Id.*

These opinions are incorrect because there is no Pennsylvania authority suggesting or

holding that there is anything unique about the types of contractual relations between students and

universities.[5] Pennsylvania contract law recognizes implied-in-fact contracts. The *Pitt*, *Temple*,

and *Penn* opinions all presume, directly or indirectly, that any enforceable promise by the

universities must be express and in writing. But, as Plaintiffs show here, there are substantial

allegations from which the Court can reasonably infer a promise by Defendant to provide in-

---

[5] At one point, the *Penn* opinion states: "The only implied contract Pennsylvania recognizes in the educational context is a private educational institution's obligation to confer a degree upon a student's successful completion of the degree requirements." *Penn*, 2021 WL 1539493, at *4 (citing *Gati v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*, 91 A.3d 723, 731 (Pa. Super. 2014). But *Gati* did not include such a broad holding. In the context of a case regarding academic discipline, in the portion cited by *Penn* the *Gati* court simply noted that a student's right to attend a college or university is subject to the condition that he comply with its rules, that students have a reasonable expectation to receive a degree if they fulfill the requirements, and that courts will not interfere with academic or disciplinary decisions absent an abuse of discretion. *See Gati*, 91 A.3d at 731. Nothing in *Gati* limits a student's ability to bring breach of contract claims based on a university's failure to provide specific, identifiable services that the student specifically paid more for, like in-person instruction and access to a physical campus.

person, on-campus instruction and services. When faced with an array of choices for shaping their education, including the option to take online-only courses at a reduced price, Plaintiffs *specifically chose* in-person education at specific campuses, and they *paid more* to get those benefits. These allegations are sufficient under *Twombly* and *Iqbal* to state a claim for breach of contract.

### C.   The SFRA Does Not Govern Plaintiffs' Breach of Contract Claims

#### 1.   The SFRA Is Not an Enforceable Contract

"A mutuality of obligation exists when both parties to the contract are required to perform their respective promises." *Geisinger Clinic v. Di Cuccio*, 606 A.2d 509, 512 (Pa. Super. Ct. 1992). "If a mutuality of promises is absent, the contract is unenforceable." *Id.* Here, the SFRA imposes no obligation on Defendant. The Agreement reads, in pertinent part:

> By signing this Student Financial Responsibility Agreement ("Agreement"), I understand that when I register for class(es) at The Pennsylvania State University ("Penn State" or "University"), I promise to take financial responsibility for the payment of all tuition, fees and other University charges on my student account relating to my enrollment and/or attendance at Penn State.

SFRA at 1. While the document purports to bind the student to pay charges "related to enrollment and/or attendance," the document does not actually require Defendant to provide any benefits or services in exchange for such payment. Thus, there is no mutual consideration because Defendant is not required to provide anything in exchange for Plaintiffs' promises to "take financial responsibility" for payments.

Even assuming there is mutual consideration (and there is not), the SFRA still is not a contract because it lacks material terms. "An enforceable contract requires, among other things, that the terms of the bargain be set forth with sufficient clarity." *Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. Ct. 2006). "Where … there is no agreement or even a discussion as to any of the essential terms of an alleged bargain, such as time or manner of performance, or price or

9

consideration, the 'agreement' is too indefinite." *Id.* at 31 (citing *Lombardo v. Gasparini*

*Excavating Co.*, 123 A.2d 663, 666 (Pa. 1956)).

In re U. of Miami, is instructive.[6]  In that case, the university argued that "the Financial

Responsibility Statement does not distinguish between in-person or remote classes and,

therefore, UM had no contractual duty to provide in-person instruction." *In re U. of Miami*, 2021

WL 1251139, at *5.  However, the court there held that "the Financial Responsibility Statement

is not a contract in that it does not address numerous material terms concerning the students'

enrollment, including the cost and amount of tuition and fees owed." *Id*.

Similarly here, the SFRA contains no material terms.  The document fails to address

what (if any) services Defendant will provide, or the duration that such services will be

provided.  Furthermore, the SFRA fails to establish the price that will be paid for the undefined

services.  Defendant appears free to assess any charge it sees fit, so long as that charge "relates"

to "enrollment and/or attendance," another undefined term that appears left to Defendant's

unfettered discretion.  Indeed, under a literal reading of the document, once a student "registers

for classes," Penn State has discharged all of its contractual obligations, and could simply

refrain from providing any actual instruction or any further services whatsoever, and students

would have no remedy.  This is not a hyperbolic statement.  In fact, this is the exact

interpretation Defendant urges the Court to adopt.  *See* MTD at 7 ("The SFRA provide students

the right to register for classes, and in return for that right, the students promise to pay 'all

tuition, fees, and other University charges … relating to [their] enrollment and/or attendance at

---

[6] Defendant attempts to distinguish *In re U. of Miami* and other authorities by claiming those cases were based on state law that is not parallel to Pennsylvania law.  MTD at 9.  However, Defendant has not demonstrated *how* the laws of other states differ from Pennsylvania law with regard to contract formation and interpretation.  Indeed, "contract law is not at its core diverse, nonuniform, and confusing."  *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 n.8 (1995) (internal quotations omitted)

Penn State.'").

But students do not pay Penn State tuition and fees just for the right to "register" for classes. There is obviously more to the parties' agreement, as noted in *Ford v. Rensselear*: "[p]aying tuition inherently changes the applicant's status to student … In short, what a student expects to receive in exchange for tuition money covers much more territory than simply the right to take classes."  2020 WL 7389155, at *6; *see also Rhodes v. Embry-Riddle*, 2021 WL 140708, at *5–6 ("Surely those on-campus students are paying for *something*… Following [d]efendant's logic, a theatergoer who paid to see Hamilton on Broadway would suffer no damages if the theater shut down, kept his money, and allowed him to watch a recording of Hamilton on Disney+. The two experiences are simply not the same and, therefore, have different values.")

The complete absence of any obligation running to Penn State in the SFRA and its lack of any material terms demonstrates that it is not a contract, let alone the parties' entire contract. Instead, it is merely an agreement that a student will pay the agreed upon tuition once the student reaches a future agreement with Defendant regarding what classes the student will take[7] and what tuition Defendant will charge.  However, neither the agreement regarding classes nor payment are addressed in this document.  Accordingly, the SFRA is at most an agreement to agree, which is not enforceable.  *MDL Capital Management, Inc. v. Federal Ins. Co.*, 274 F. App'x 169, 171 (3d Cir. 2008) ("[A]n 'agreement to agree' … under Pennsylvania law is a nullity."); *Onyx Oils & Resins, Inc. v. Moss*, 80 A.2d 815, 816 (Pa. 1951) ("An agreement to

---

[7] Here, it is important to note that students must sign this document *prior* to even beginning the course registration process.  Declaration of Jeffery Norris, ECF No. 38-3, at ¶ 3.  Therefore, at the time of signing the document, the students and University have not even settled on how many classes the student will take.

agree is incapable of enforcement.").[8]

### 2. Even If the SFRA Is Enforceable, Plaintiffs' Breach of Contract Claims Are Outside the Scope of the SFRA

Even if the SFRA is an enforceable contract (and it is not), the SFRA does not resolve Plaintiffs' breach of contract claims.  As an initial matter, numerous courts have found that financial responsibility agreements do not constitute the extent of the agreement between students and universities.  *Penn*, 2021 WL 1539493, at *5 ("[T]he contract is comprised of more than the Financial Responsibility Statement and related financial policies contained in the PennBook. The contract consists of the Financial Responsibility Statement, Penn's University Catalog, registration materials, online fee descriptions, PennBook and any other pages of Penn's website providing information and resources for enrolled students."); *Pitt*, 2021 WL 1630579, at *4 (acknowledging that despite existence of Financial Responsibility Agreement, plaintiffs could allege an implied contract claim arising from other evidence); *In re U. of Miami*, 2021 WL 1251139, at *5 ("The Financial Responsibility Statement may be relevant to the formation of the alleged contract between Plaintiffs and UM, but it is not the entirety of the parties' agreement."); *Villarreal v. Art Institute of Houston, Inc.*, 20 S.W.3d 792, 797 (Tex. Ct. App. 2000) ("[W]hile the promises contained in the enrollment agreement may be clear, it is not clear that those are the only promises between the parties … Rather, we find that the entire agreement was made partly through written documents, partly through oral representations, and partly through implicit

---

[8] Defendant cites several cases for the proposition that the SFRA is an enforceable contract.  Each is distinguishable. In *Zwiker v. Lake Superior State Univ.*, No. 20-000070 (Mich. Ct. Claims, Aug. 31, 2020), the plaintiff conceded that the analog to the SFRA was the valid, binding, and controlling agreement between the parties.  *See Zwiker*, slip. op. at 9 ("In arguing for a different outcome, plaintiff has not disputed the existence of the Tuition Contract, nor has she disputed that the document controls the parties' relationship.").  Here, Plaintiffs concede neither point.  And in *Pitt*, the plaintiffs "d[id] not dispute that they entered into the Agreement or that the University followed the Agreement's plain terms throughout the Spring 2020 semester." 2021 WL 1630579, *3.

promises ascertained by the parties' actions and surrounding circumstances.").  In other words,

even if the SFRA forms a *portion* of Plaintiffs' contract with Penn State, it does not form the

*entirety* of the contract.  The Court may therefore look to other university publications for the

entirety of the agreement between Plaintiffs and Penn State, which plainly evidence a promise

for in-person education.

>    i.    *At the Very Least, the SFRA Does Not Bar Plaintiffs' Breach of*
>          *Contract Claims Related to Payment of Mandatory Fees*

Even if the SFRA disposes of Plaintiffs' claims based on the payment of tuition (and it

does not), it does not dispose of Plaintiffs' claims for the payment of the Mandatory Fees.  In

*Penn*, the university's SFRA equivalent required students "to pay *tuition, fees and other charges*

*associated with my enrollment in these classes*."  2021 WL 1539493, at *5.  Nonetheless, the

court sustained the breach of contract claim based on fees.  *Id.* at *8 ("Based on the plaintiffs'

allegations and the fee descriptions themselves, the students were charged fees for certain

resources and services that were later cancelled or unavailable … At the pleading stage, the

plaintiffs have alleged a claim for breach of contract on behalf of the Fees Class.").

The SFRA here contains language almost identical to that in *Penn*.  SFRA at 1 ("I

promise to take financial responsibility for the payment of all *tuition, fees, and other university*

*charges… relating to my enrollment and/or attendance at Penn State*.") (emphasis added).

Thus, the Court should, at a minimum, follow this part of *Penn* and refuse to dismiss Plaintiffs'

fee claims based on the SFRA.

Defendant attempts to mitigate the effect of *Penn* by stating that "the relationship

between a student and a public university is not inherently contractual."  MTD at 11.  This

distinction is not compelling for several reasons.  First, Defendant is not a state-owned public

school.  The Commonwealth of Pennsylvania owns fourteen colleges and universities which are

under the control of Pennsylvania's State System of Higher Education.[9]  The Pennsylvania State University is not one of them.  Instead, Defendant is an independent institution, governed by its own board of trustees.[10]  In fact, in *Roy v. Pennsylvania State University*, 568 A.2d 751 (Pa. Commw. Ct. 1990), Defendant insisted that it was not a state-owned school in order to avoid public disclosure under the Right to Know Act.  The court agreed, holding, "[t]he legislature has repeatedly designated Penn State a *state-related institution as distinguished from a state-owned or state-aided institution*."  *Roy*, 568 A.2d at 752 (emphasis added); *see also Pennsylvania State Univ. v. Derry Twp. Sch. Dist.*, 731 A.2d 1272, 1274 (Pa. 1999) (holding "[t]he board of trustees of PSU is not governmental in nature.").

Even if Defendant was a public university (and it is not), it does not follow that Defendant has *no* contractual relationship with its students.  Defendant cites several cases to support its position that it has no contractual relationship with students.[11]  However, these cases all stem from *Boehm v. Univ. of Pa. Sch. of Veterinary Med.*, 573 A.2d 575 (1990).  In *Boehm*, the court noted that while students at public schools are afforded due process rights under the constitution with respect to dismissal and other disciplinary matters, for private schools "students who are being disciplined are entitled only to those procedural safeguards which the school specifically provides." *See Boehm*, 573 A.2d at 579.  In other words, public university students are afforded *more* inherent rights than private school students, not the other way around.  Thus, *Boehm* does not hold there is no inherent contractual relationship between a student and a public university.

---

[9] OUR UNIVERSITIES, https://www.passhe.edu/university/Pages/Our-Universities.aspx.
[10] ROLE OF THE BOARD OF TRUSTEES IN UNIVERSITY GOVERNANCE, https://trustees.psu.edu/purpose/.
[11] *See Tran v. State Sys. Of Higher Educ.*, 986 A.2d 179 (Pa. Commw. Ct. 2009); *Cohn v. Pennsylvania State Univ.*, 2020 WL 738496 (E.D. Pa. Feb. 12, 2020); *Bradshaw v. Pennsylvania State Univ.*, 2011 WL 1288681 (E.D. Pa. Apr. 5, 2011).

Defendant's argument also makes no sense as a matter of policy.  Unlike a primary school student, who is both compelled by law to attend, the university student is not required to enroll at all, but does so voluntarily and pays a price to do so.  Therefore, when a student voluntarily enrolls in a public university and voluntarily pays tuition to do so, he or she must necessarily expect to get *something* in return.  This expectation of getting something in exchange for giving something is the very definition of a contractual relationship, and it is that expectation that forms the basis of the contract between the student and the university.  *See Rhodes v. Embry-Riddle*, 2021 WL 140708, at *5 ("Surely those on-campus students are paying for *something*.") (emphasis in original); *see also In re Rotavirus Vaccines Antitrust Litig.*, 2020 WL 6828123, at *4 n.3 (E.D. Pa. Nov. 20, 2020) (contractual relationship formed where there is "an offer, acceptance and consideration or mutual meeting of the minds") (internal quotations omitted).

Finally, Defendant argues that, even disregarding the SFRA, the fee descriptions here were not "part of a *contract* between the parties, as opposed to another marketing statement." MTD at 12 (emphasis in original).  This is false.  Plaintiffs allege that they paid a "Student Initiated Fee," which "supports student-centered activities, services, facilities and recreation to improve student life."  Compl. ¶ 23.  Such fee descriptions have regularly been held sufficient to state a breach of contract claim based on fees.  *See, e.g., Penn*, 2021 WL 1539493, at *8 ("The General Fee provides students 'with full access to … multicultural resource centers, student activities, and recreation and fitness.'"); *Bergeron*, 2020 WL 7486682, at *1 ("RIT's website states that the Student Activity Fee 'supports programs, events, and services that enhance the quality of student life at RIT.'"); *Ford*, 2020 WL 7389155, at *7 (Activity Fee provides "membership privileges" to ""over 200 service, media, recreation, club sports, performing and visual arts, multicultural, and special interest student organizations").

15

**D.      Plaintiffs' Claims Are Not "Educational Malpractice" Claims and Do Not Require Inquiry into the Quality of Plaintiffs' Education**

Defendant seeks dismissal of the breach of contract claim on the basis that it "boils down to a theory of educational malpractice." Def.'s Mem. at 17. This mischaracterizes Plaintiffs' claims. As an initial matter, it is important to note that there are approximately 150 suits currently pending throughout the country related to universities' failures to provide appropriate refunds after switching to remote instruction during the Spring of 2020. The trend of court decisions in these COVID-19 tuition/fee refund class action lawsuits has been to reject attempts to recharacterize the claims as assertions of educational malpractice. In fact, of the numerous cases where motions to dismiss have been fully adjudicated, courts are generally denying such motions.[12] Even the *Pitt* and *Penn* courts both directly rejected those universities' arguments along these lines. *Penn*, 2021 WL 1539493, at *4 ("This is not a claim for educational malpractice. It is simply an action for breach of contract."); *Pitt*, 2021 WL 1630579, at *4 n.2 ("Plaintiffs do not raise the type of educational malpractice claims that Pennsylvania courts have rejected.").

Plaintiffs do not ask this Court to inquire into the pedagogical decisions of the University; nor do they seek for the Court to interfere with the University's autonomy or academic decision-making authority.  Not every action by a student against a school is an educational malpractice claim or intrusion on an institution's academic freedom and autonomy. The gravamen of an educational malpractice claim is the allegation that a school failed to provide an effective education. *Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397 (Pa. Super. Ct. 1992). Thus, an educational malpractice claim is one that "amounts to a general allegation of lack of quality education, without more." *Id*. at 404.

---

[12] *See* cases cited in n. 2, *supra*.

However, where the breach of contract claim does not allege that "that the school breached its agreement by failing to provide an effective education," but instead alleges failure to provide other specified services, the action may be properly maintained. *Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 89–90 (N.Y. App. Div. 1982) (cited with approval by *Cavaliere*, 605 A.2d at 401). The *Paladino* Court held that if a school "were to accept a student's tuition and thereafter provide no educational services, an action for breach of contract might lie. Similarly, if the contract with the school were to provide for certain specified services, such as for example, a designated number of hours of instruction, and the school failed to meet its obligation, then a contract action with appropriate consequential damages might be viable." *Paladino*, 89 A.D.2d at 92. Adopting the distinction set forth by *Paladino*, as well as the Ohio case of *Malone v. Acad. of Ct. Reporting*, 582 N.E.2d 54 (Ohio Ct. App. 1990), the Superior Court of Pennsylvania stated:

> We are convinced that the distinction drawn by the *Paladino* and *Malone* courts is valid. We can fathom no policy against permitting a cause of action for breach of contract or misrepresentation where, for example, a private trade school has made a positive representation that a certain curriculum will be offered and the student then finds that such curriculum is not available or where the school has asserted that it is accredited or licensed to give a certain degree and it is later discovered that this is false. In such a case, the nature of the contractual undertaking and the breach thereof are clear and the plaintiff may be able to establish a cause of action against the offending institution.

*Cavaliere*, 605 A.2d at 404. This is consistent with the law of most jurisdictions. Courts across the country have found non-malpractice, cognizable breach of contract claims in a variety of scenarios.[13]  Just as in those cases and in *Pitt* and *Penn*, the Complaint does not allege a cause of action for educational malpractice.

---

[13] *See, e.g.*, *Ross v. Creighton University*, 957 F.2d 410, 416–17 (7th Cir. 1992); *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809 (Cal. Ct. App. 2007); *Kashmiri v. Regents of Univ. of Cal.*, 156 Cal. App. 4th 809 (Cal. Ct. App. 2007); *CenCor, Inc. v. Tolman,* 868 P.2d 396, 300 (Colo. 1994); *Zumbrun v. Univ. of S. Cal.,* 23 Cal. App. 3d 1, 7 & 10–11 (Cal. Ct. App. 1972); *Ansari v. New York University*, 1997 WL 257473 (S.D.N.Y. 1997).

### E.      Plaintiffs Stated A Claim in the Alternative for Unjust Enrichment

Defendant first argues that "[t]here can be no claim for quasi-contract when there is an *actual* contract between the parties." MTD at 15 (emphasis in original). Defendant's argument ignores the plain language of Fed. R. Civ. P. 8(d)(3), which provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." *See also* Fed. R. Civ. P. 8(a)(3) ("[A] demand for relief sought, which may include relief in the alternative or different types of relief."); FAC ¶ 65 (specifying the unjust enrichment claim is brought in the alternative). Moreover, under Pennsylvania law, Plaintiffs may plead an unjust enrichment claim in the alternative. *Vantage Learning (USA), LLC v. Edgenuity, Inc.*, 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017) ("Rule 8(d)(2) nonetheless permits a plaintiff to plead unjust enrichment in the alternative in certain circumstances, even where the existence of a contract would preclude recovery for unjust enrichment." (internal quotations omitted)).

Defendant's vehement assertion that the SFRA is the underlying contract is of no avail when it comes to Plaintiffs' claim for unjust enrichment.  Plaintiffs have repeatedly refuted that the SFRA is the underlying contract that comprises the entirety of the contractual relationship between students and the University.  As such, unjust enrichment is an appropriate claim at this stage because "[a] plaintiff is permitted to plead alternative theories of recovery based on breach of contract and unjust enrichment in cases where there is a 'question as to the validity of the contract in question.'" *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2012), citing *AmerisourceBergen Drug Corp. v. Allscripts Healthcare, LLC,* Civ. A. No. 10–6087, 2011 WL 3241356, at *3 (E.D. Pa. July 29, 2011).

Moreover, Defendant argues that there is a contract governing Plaintiffs' claims, but disputes any breach. *Compare* MTD at 10 ("Plaintiffs do not attempt to plead a different contract

from the SFRAs, much less 'any specific contractual provisions that the University allegedly breached.'"), *with id.* at 12 ("Plaintiffs' allegations do not identify any contractual terms because they point only to Penn State's unilateral statements."), *and id.* at 15 ("Penn State and the Plaintiffs *do* have a contractual relationship, albeit not one that Penn State breached." (emphasis in original)). Plaintiffs dispute that the agreement is a valid contract, or that it applies to their claims. Cases in which the existence of the governing contract is in dispute are exactly the type where it is permissible to plead unjust enrichment in the alternative. *Vantage Learning (USA), LLC*, 246 F. Supp. 3d at 1100 (stating unjust enrichment may be plead in the alternative where "the existence of a contract is uncertain or its validity is disputed by the parties"); *Salerno*, 2020 WL 5583522, at *5 (allowing unjust enrichment to be plead in the alternative where "[r]egardless of whether a contract exists, the College disputes the merits of the breach of contract claim").

### F. No Forum Selection Clause Applies

Defendant argues that "the Court should dismiss [Plaintiffs'] complaint because of the SFRA's forum selection clause."  MTD at 19–20.  But as previously addressed, the SFRA is not an enforceable contract because it contains no promises or consideration on the part of Penn State, and there is no indication within the SFRA that Penn State intends to be bound by any of its terms.  *See* Argument at Section III.C, *supra*.  The forum selection clause is no different than the rest of the SFRA.  The clause states that "[a]ny suit, action or proceeding arising in connection with this Agreement must be brought in the courts of Centre County, Pennsylvania."  SFRA at p. 2.  However, there is no indication that Penn State agrees to be bound to the clause. The clause is written without reference to any parties, as the SFRA never refers to "the parties," or "we," or indicates in any way that Defendant is agreeing to be bound to any of its terms.  Thus, the clause only indicates that *students* will be bound by the forum selection clause, not

Defendant.  Accordingly, the forum selection clause within the SFRA is not enforceable for lack of mutual consideration, and the Court should find that Penn State is not entitled to dismissal on that basis.

Even if the forum selection clause is enforceable (and it is not), Plaintiffs' claims fall outside the scope of the clause.  By its own terms, the forum selection clause applies only to actions "arising in connection with [the SFRA]."  SFRA at 2.  Yet, as Plaintiffs have argued above, the SFRA does not cover Plaintiffs' claims, or define the entire scope of Plaintiffs' relationship with Penn State.  *Smith*, 2021 WL 1539493, at *5; *In re U. of Miami*, 2021 WL 1251139, at *5; *Villarreal*, 20 S.W.3d at 797.  Indeed, Defendant itself acknowledges that Plaintiffs are not seeking to enforce any provision of the SFRA.  Thus, the forum selection clause does not apply.  *Crescent Int'l, Inc. v. Avatar Communities*, *Inc.*, 857 F.2d 943, 944 (3d Cir. 1988) (noting that forum selection clause governs dispute if the claims asserted "arise out of the contractual relation *and implicate the contract's terms*.") (emphasis added).[14] The SFRA merely describes the student's obligation to pay tuition and acknowledges various steps the University may take towards collection.  Determining the merits of Plaintiffs' claims requires no references to the SFRA; its terms are simply not implicated by Plaintiffs' claims.  Because Plaintiffs' claims do not "aris[e] in connection with" the SFRA, the forum selection clause does not apply.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss in its entirety.

---

[14] The mere fact that students acknowledge the SFRA prior to registering for classes in a given semester is not enough on its own to establish a "connection" between the SFRA and the claims here.  *See Morgan Trailer Mfg. Co. v. Hydraroll, Ltd.*, 759 A.2d 926, 932 (Pa. Super. Ct. 2000) (noting that existence of one contract between the parties "does not mean that all future relations … are somehow connected to that contract.").

Dated: May 28, 2021              Respectfully Submitted:

**CARLSON LYNCH LLP**

<u>/s/ Gary F. Lynch</u>
Gary F. Lynch
Edward W. Ciolko*
Nicholas A. Colella*
1133 Penn Avenue 5th Floor
Pittsburgh, PA 15222
P. (412) 322-9243
F. (412) 231-0246
glynch@carlsonlynch.com
eciolko@carlsonlynch.com
ncolella@carlsonlynch.com

-and-

**ANASTOPOULO LAW FIRM, LLC**
Eric M. Poulin*
Roy T. Willey, IV *
32 Ann Street
Charleston, SC 29403
P. (843) 614-8888
F. (843) 494-5536
eric@akimlawfirm.com
roy@akimlawfirm.com

-and-

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
888 Seventh Avenue
New York, NY 10019
P. (646) 837-7150
F. (212) 989-9163
jmarchese@bursor.com

*Admitted Pro Hac Vice

**ATTORNEYS FOR PLAINTIFFS**

21

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically and will be served on counsel of record through the Court's electronic filing system.

*/s/ Gary F. Lynch*
Gary F. Lynch