**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BENJAMIN RAMEY, LOURDES BURGOS, and TYLER THOMSON, *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> THE PENNSYLVANIA STATE UNIVERSITY, <br><br> Defendant. | Case No. 2:20-cv-00753-RJC |

**REPLY IN SUPPORT OF DEFENDANT**
**PENN STATE'S SECOND MOTION TO DISMISS**
<u>**THE FIRST AMENDED CLASS ACTION COMPLAINT**</u>

James S. Urban (Pa. 82019)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, Pennsylvania 15219
Phone: (412) 391-3939
Fax: (412) 394-7959
Email: jsurban@jonesday.com

Leon F. DeJulius, Jr. (Pa. 90383)
Aaron Healey (Pa. 310803)
JONES DAY
250 Vesey Street
New York, NY 10281
Phone: (212) 326-3939
Fax: (212) 755-7306
Email: lfdejulius@jonesday.com
Email: ahealey@jonesday.com

Matthew A. Kairis
JONES DAY
2727 N. Harwood Street, Suite 600
Dallas, Texas 75201
Phone: (214) 969-3605
Fax: (214) 969-5100
Email: makairis@jonesday.com

*Counsel for The Pennsylvania State University*

<u>**TABLE OF CONTENTS**</u>

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

     I.     Plaintiffs' Breach of Contract Claim Fails........................................................... 3

          A.     The SFRAs are Valid Contracts that Preclude Plaintiffs' Claims ............ 3

          B.     Plaintiffs Fail to Allege Any Implied Contract........................................ 7

     II.    Plaintiffs' Unjust Enrichment Claim Fails........................................................ 12

     III.   Plaintiffs Have Abandoned Any Argument for Conversion or that Burgos Can State a Claim.............................................................................................. 13

     IV.   In the Alternative, the Forum Selection Clause Requires Dismissal .................. 13

CONCLUSION................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abbott v. Perez*,
   138 S. Ct. 2305 (2018) .................................................................................................11

*Antkowiak v. TaxMasters*,
   455 F. App'x 156 (3d Cir. 2011) ....................................................................................4

*Borrell v. Bloomsburg Univ.*,
   955 F. Supp. 2d 390 (M.D. Pa. 2013) ...........................................................................10

*Cohn v. Pennsylvania State Univ.*,
   No. 19-2857, 2020 WL 2770684 (E.D. Pa. May 28, 2020) ...................................9, 10

*Collins v. Mary Kay, Inc.*,
   874 F.3d 176 (3d Cir. 2017) ..........................................................................................13

*Crawford v. Presidents & Directors of Georgetown Coll.*,
   No. 20-cv-1141, 2021 WL 1840410 (D.D.C. May 7, 2021) ...........................................7

*Crescent Int'l, Inc. v. Avatar Cmty., Inc.*,
   857 F.2d 943 (3d Cir. 1988) ..........................................................................................15

*Crossgates Realty, Inc. v. Moore*,
   420 A.2d 1125 (Pa. Super. Ct. 1980) ............................................................................12

*Dan Lepore & Sons Co. v. Torcon, Inc.*,
   No. 20-06230, 2021 WL 1122178 (E.D. Pa. Mar. 24, 2021) .......................................14

*DiBonaventura v. Consol. Rail Corp.*,
   539 A.2d 865 (Pa. Super. Ct. 1988) ..............................................................................12

*Elansari v. United States*,
   No. 3:15-cv-01461, 2018 WL 6495079 (M.D. Pa. Oct. 26, 2018) .................................5

*Gati v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*,
   91 A.3d 723 (Pa. Super. Ct. 2014) ................................................................................11

*Geisinger Clinic v. Di Cuccio*,
   606 A.2d 509 (Pa. Super. Ct. 1992) ................................................................................3

*Hickey v. Univ. of Pittsburgh*,
  No. 2:20-cv-690, 2021 WL 1630579 (W.D. Pa. Apr. 27, 2021) ..................................... passim

*Holdbrook Pediatric Dental, LLC v. Pro Computer Serv., LLC*,
  No. 14-6115, 2015 WL 4476017 (D.N.J. July 21, 2015) ........................................................5

*In re McGraw-Hill Glob. Educ. Holdings LLC*,
  909 F.3d 48 (3d Cir. 2018)...................................................................................................15

*In re Penn Cent. Transp. Co.*,
  831 F.2d 1221 (3d Cir. 1987)............................................................................................1, 7

*In re SemCrude, L.P.*,
  504 B.R. 39 (Bankr. D. Del. 2013) ........................................................................................4

*In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*,
  No. 20-22207-CIV, 2021 WL 1251139 (S.D. Fla. Mar. 5, 2021) ...........................................6

*John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*,
  119 F.3d 1070 (3d Cir. 1997)...............................................................................................15

*Lackner v. Glosser*,
  892 A.2d 21 (Pa. Super. Ct. 2006) .........................................................................................4

*Levy-Tatum v. Navient Sols., Inc.*,
  183 F. Supp. 3d 701 (E.D. Pa. 2016) ...................................................................................13

*Marra v. Papandreou*,
  216 F.3d 1119 (D.C. Cir. 2000) ...........................................................................................14

*McKesson Corp. v. Campbell*,
  No. 2579 EDA 2014, 2015 WL 7571502 (Pa. Super. Ct. Nov. 24, 2015) ............................13

*Ohama v. Markowitz*,
  434 F. Supp. 3d 303 (E.D. Pa. 2020) .................................................................................3, 4

*Reardon v. Allegheny Coll.*,
  926 A.2d 477 (Pa. Super. Ct. 2007) .......................................................................................9

*Ross v. Pennsylvania State Univ.*,
  445 F. Supp. 147 (M.D. Pa. 1978) .........................................................................................5

*Ryan v. Temple Univ.*,
  No. 5:20-cv-02164, 2021 WL 1581563 (E.D. Pa. Apr. 22, 2021).................................. passim

iii

*Smith v. Univ. of Pennsylvania*,
No. 20-2086, 2021 WL 1539493 (E.D. Pa., April 20, 2021)............................................ passim

*Socko v. Mid-Atl. Sys. of CPA, Inc.*,
126 A.3d 1266 (Pa. 2015) .................................................................................................8

*Swartley v. Hoffner*,
734 A.2d 915 (Pa. Super. Ct. 1999) ................................................................................13

*Tran v. State Sys. of Higher Educ.*,
986 A.2d 179 (Pa. Commw. Ct. 2009) ..........................................................................6, 7, 9

*United States v. Gonzales*,
520 U.S. 1 (1997)..............................................................................................................14

*Woods v. Christensen Shipyards, Ltd.*,
No. 04-61432-CIV, 2005 WL 5654643 (S.D. Fla. Sept. 23, 2005).......................................14

*Yucis v. Sears Outlet Stores, LLC*,
No. 18-15842, 2019 WL 2511536 (D.N.J. June 18, 2019)....................................................13

*Zwiker v. Lake Superior State Univ.*,
No. 20-000070-MK, 2020 WL 8572097 (Mich. Ct. Cl., Aug. 31, 2020)................................7

## OTHER AUTHORITIES

Mem. of Law in Supp. of Temple Univ. Mot. to Dismiss,
*Ryan*, No. 5:20-cv-02164, ECF No. 16-1, 2020 WL 9216586
(E.D. Pa. Apr. 22, 2021) ...................................................................................................6

Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss,
*Hickey*, No. 2:20-cv-690, ECF No. 28, 2020 WL 9217934
(W.D. Pa. Apr. 27, 2021)...................................................................................................6

Univ. of Pittsburgh's Br. in Supp. of Mot. to Dismiss,
*Hickey*, No. 2:20-cv-690, ECF No. 26, 2020 WL 9217927
(W.D. Pa. Apr. 27, 2021) ...............................................................................................8, 9

**INTRODUCTION**

Plaintiffs hope this Court will ignore the binding Student Financial Responsibility Agreements that they signed; ignore Pennsylvania law holding that public universities are not contractually bound by marketing statements on their websites; and ignore the unanimous Pennsylvania decisions that have rejected identical lawsuits.  Plaintiffs want this Court to strike out on its own, untethered to facts, law, or precedent.  Plaintiffs are wrong.

Penn State and Plaintiffs agreed, in explicit terms, that Plaintiffs would pay tuition and fees for the right to register for classes.  ECF No. 38-3, Decl. of Jeffery A. Norris, Exs. A, B, C ("SFRA" or "SFRAs").  Those agreements *do not promise in-person education*.  Plaintiffs' attempts to avoid the SFRAs are wanting.  They assert that the SFRAs are not even contracts, on the purported basis that Penn State provided no consideration or the agreements somehow lack material terms.  But the SFRAs expressly are bilateral agreements: Penn State agrees to allow students to register for classes if the students agree to pay for those classes.  Penn State's agreement to allow registration is more than sufficient consideration under blackletter Pennsylvania law.  And no "material terms" are missing.  Plaintiffs *want* additional terms in their contracts—but contractual validity does not turn on Plaintiffs' post hoc wish list.

Plaintiffs next argue that there is some *other* implied contract between the parties, which is just as wrong.  To start, there cannot be an additional implied contract regarding tuition and fees, because there can be no "implied-in-fact contract . . . when . . . the parties have an express agreement dealing with the same subject."  *In re Penn Cent. Transp. Co.*, 831 F.2d 1221, 1229 (3d Cir. 1987).  If this hypothetical implied contract is *not* related to tuition and fees, it cannot be the basis of Plaintiffs' claims.  Plaintiffs have no way around this issue.

But even if one sidestepped the SFRAs, Plaintiffs *still* fail to allege any contractual promise that Penn State breached.  Plaintiffs' Complaint relies on marketing statements that

Pennsylvania courts repeatedly have held do not contractually bind public universities. Plaintiffs' only response to this authority is to argue that Pennsylvania's law is bad policy—but federal courts must apply Pennsylvania law, not change it.

Plaintiffs' other claims fare no better. They continue to assert that they can plead unjust enrichment in the alternative, but that is not true where all parties agree there was a contract. In any event, unjust enrichment claims require *injustice*, and Plaintiffs include not a single mention of how their allegations support some "injustice." Meanwhile, Plaintiffs have simply abandoned their conversion claim.

*All* of these arguments have been confirmed by this Court and the Eastern District, in *Hickey v. Univ. of Pittsburgh*, No. 2:20-cv-690, 2021 WL 1630579 (W.D. Pa. Apr. 27, 2021), *Ryan v. Temple Univ.*, No. 5:20-cv-02164, 2021 WL 1581563 (E.D. Pa. Apr. 22, 2021), and *Smith v. Univ. of Pennsylvania*, No. 20-2086, 2021 WL 1539493 (E.D. Pa., April 20, 2021). In response to these well-reasoned opinions, Plaintiffs contend that those courts erred because they held that "students' remedies are limited by the express, written promises of the universities." Pls.' Opp. to Def.s' Mot. to Dismiss, ECF No. 40, at 7 ("Opp."). But that is *precisely* what express, written contracts do: they define and delimit the relationships between contracting parties. Here, Penn State never promised in-person education in return for tuition and fees. That is dispositive.

Penn State is certainly "sympathetic to these students," as well as the billions affected by COVID-19 (Penn State included); but "not every unfortunate situation is actionable." *Hickey*, 2021 WL 1630579, at *6. Plaintiffs have not stated a claim, and their Complaint should be dismissed with prejudice.

## ARGUMENT

### I.    PLAINTIFFS' BREACH OF CONTRACT CLAIM FAILS.

#### A.    The SFRAs are Valid Contracts that Preclude Plaintiffs' Claims.

The SFRAs are valid, enforceable contracts under Pennsylvania law, and they cover the subject matter at issue, precluding Plaintiffs' claims.  Recognizing as much, Plaintiffs contend that the Student Financial Responsibility *Agreement* is not an agreement.  Opp. at 9–12. Plaintiffs are wrong; the SFRA is clear on its face that it is a contract between Penn State and the student—it binds both parties, provides consideration to each, and does not lack material terms.

"A bilateral contract is formed when one party to the contract promises to perform or to forebear from performing in exchange for the promised performance or forbearance of the other contracting party." *Geisinger Clinic v. Di Cuccio*, 606 A.2d 509, 511 (Pa. Super. Ct. 1992). Those promises need not be of any specific kind; "[t]he test for consideration is whether the [contractee] . . . has suffered *any* detriment, or whether . . . he has done *something* that he was not bound to do, or has promised to do *some* act, or has abstained from doing *something*.'" *Ohama v. Markowitz*, 434 F. Supp. 3d 303, 315 (E.D. Pa. 2020) (emphases added) (quoting *Mikos v. Kida*, 172 A. 101, 102 (Pa. 1934)).  Indeed, as "long as 'the promisee has suffered [a] detriment, however slight, or . . . has done what he was not otherwise bound to do [even though he has suffered no real detriment],' the contract is supported by valid consideration." *Ohama*, 434 F. Supp. 3d at 315 (alterations in original) (quoting *In re Commonwealth Trust Co. of Pittsburgh*, 54 A.2d 649, 652 (Pa. 1947)).

Here, all parties—Penn State and the signatory students—agreed to do what they were otherwise not "bound" to do. *Id.*  The students agreed to pay "all tuition, fees, and other University charges . . . relating to [their] enrollment and/or attendance at Penn State."  SFRA at 1.  And, contrary to Plaintiffs' assertions, Penn State explicitly agreed to "giv[e] up something

which immediately prior [it] was privileged not to do or refrain from doing." *Ohama*, 434 F.

Supp. 3d at 315–16 (citation omitted). *Prior* to the execution of the SFRA, Penn State has no

obligation to allow a student to register for classes; *afterwards*, Penn State is so obligated.

Plaintiffs ignore this consideration—perhaps they do not believe it was valuable enough.

But even though Plaintiffs "may perceive this . . . consideration as trivial in nature, it is more

than a mere 'peppercorn' and not for this court to weigh." *Antkowiak v. TaxMasters*, 455 F.

App'x 156, 161 n.9 (3d Cir. 2011). A "'peppercorn does not cease to be good consideration if it

is established that the promisee does not like pepper and will throw away the corn.'" *In re

SemCrude, L.P.*, 504 B.R. 39, 55 n.54 (Bankr. D. Del. 2013), *adopted sub nom. In re Semcrude,

L.P.*, No. 14-cv-357, 2015 WL 4594516 (D. Del. July 30, 2015) (quoting *Chappell & Co. v.

Nestlé Co.*, [1960] A.C. 87 (H.L. 1959)).

Plaintiffs also wrongly assert that the SFRA lacks material terms. In reality, the SFRA

merely lacks terms that *Plaintiffs wish it included*. Plaintiffs cite *Lackner v. Glosser*, 892 A.2d

21, 30 (Pa. Super. Ct. 2006), for the proposition that the "terms of the bargain [must] be set forth

with sufficient clarity," Opp. at 9, but the SFRA's terms are clear and definitive: Penn State

agrees to allow the student to register for classes. SFRA at 1. In return, the student promises

(among other things) to pay "all tuition, fees, and other University charges . . . relating to my

enrollment and/or attendance"; to "remain responsible" for payment if the student does not

"properly cancel all of my classes before the first day of the term"; and to "pay [Penn State's]

costs and fees . . . incurred in any litigation or collection activity resulting from my failure to pay

under this Agreement." SFRA at 1–2. This agreement is nothing like the one in *Lackner*, where

there was not "even a discussion as to *any* of the essential terms of an alleged bargain, such as

time or manner of performance, or price or consideration." 892 A.2d at 31.

Plaintiffs misstate what is included in the contract, too.  Plaintiffs fret that the SFRA "fails to establish the price that will be paid," and supposedly Penn State could "assess any charge it sees fit."  Opp. at 10.  But the SFRA incorporates price schedules, providing that "current published tuition and fees schedules are available at www.tuition.psu.edu."  SFRA at 1. As courts have recognized, "[i]n the internet era, when agreements are often maintained, delivered and signed in electronic form, a separate document may be incorporated through a hyperlink."  *Holdbrook Pediatric Dental, LLC v. Pro Computer Serv., LLC*, No. 14-6115, 2015 WL 4476017, at *4 (D.N.J. July 21, 2015).

Finally, Plaintiffs assert, with hyperbolic flourish, that the SFRA cannot be a binding contract between the parties because Penn State could supposedly expel students for any reason, even up until graduation.  Opp. at 10.  But this is an unsupported canard.  As explained further below, Penn State is a *public* university, meaning that its relationship with students is not inherently contractual, but students are protected by guarantees of constitutional due process. *See, e.g.*, *Elansari v. United States*, No. 3:15-cv-01461, 2018 WL 6495079, at *2 (M.D. Pa. Oct. 26, 2018), *report and recommendation adopted*, No. 3:15-cv-1461, 2018 WL 6448763 (M.D. Pa. Dec. 10, 2018).  Indeed, Plaintiffs' own cited authority holds as much.  *See Ross v. Pennsylvania State Univ.*, 445 F. Supp. 147, 153 (M.D. Pa. 1978) ("[T]he Court must decide if [the plaintiff] received procedures adequate to meet the standards of the due process clause."). Although it should not matter—even where the consequences would be strange, a contract is still a contract—the Court need have no fear that Penn State can expel students without reason.

The decisions in *Hickey*, *Ryan*, and *Smith* all confirm these points.  In *Ryan*, for instance, the court held that Temple's agreement was a valid, integrated contract that covered the dispute, even though it was a single page and did "not include the specific cost of tuition and applicable

fees." *Ryan*, 2021 WL 1581563, at *6; *see also* Mem. of Law in Supp. of Temple Univ. Mot. to

Dismiss at 6 n.6, *Ryan*, No. 5:20-cv-02164, ECF No. 16-1, 2020 WL 9216586 (E.D. Pa. Apr. 22,

2021) (providing link to the Temple agreement at issue).  Likewise, in *Hickey*, this Court held

that Pitt's nearly identical agreement was "a valid written agreement that controls Plaintiffs'

breach of contract claim." *Hickey*, 2021 WL 1630579, at *3.[1]  Although Plaintiffs assert that the

*Smith* court held otherwise with respect to Penn, that is only because Penn is a *private* university,

meaning that unilateral university statements can also form part of the contract—in contrast to

public universities, where "Pennsylvania courts have routinely declined to construe publications

like academic catalogues, student handbooks, mission statements, or marketing materials as

contracts between students and public universities." *Ryan*, 2021 WL 1581563, at *9; *see also*

ECF No. 38-1, Def.'s Mem. of Law in Supp. of Second Mot. to Dismiss at 11–13 ("MTD");

*infra* at 8–12.  Even then, the *Smith* court still held that the agreement *was valid*, just not

exclusive—and it dismissed the tuition claims, anyway.  2021 WL 1539493, at *5, *8.

In response to the clear Pennsylvania law and unanimous Pennsylvania decisions,

Plaintiffs weakly offer a single Florida court's decision, which applied *distinctly Florida law*.  In

*In re Univ. of Miami COVID-19 Tuition & Fee Refund Litig.*, No. 20-22207-CIV, 2021 WL

1251139, at *5 (S.D. Fla. Mar. 5, 2021), the court held that a "Financial Responsibility

Statement"—note even the difference in title—was not the "entirety" of the parties' agreement

because, in Florida, the "student's relationship with [a] university . . . aris[es] from [the]

university's rules, regulations, regimen and publications at the time of enrollment." *Id.* (citation

omitted).  That is expressly contrary to the rule for public universities in Pennsylvania. *Tran v.*

---

[1] Plaintiffs misleadingly assert that, in *Hickey*, no one disputed the validity of the agreement.  Opp. at 12 n.8.  As Plaintiffs should know—since they are represented by the same counsel—that is false.  The plaintiffs in *Hickey* specifically "dispute[d] the validity and applicability of the FRA."  Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss at 20, *Hickey*, No. 2:20-cv-690, ECF No. 28, 2020 WL 9217934 (W.D. Pa. Apr. 27, 2021).

*State Sys. of Higher Educ.*, 986 A.2d 179, 183 (Pa. Commw. Ct. 2009) (materials such as the "student handbook" do not constitute contract with a "public" university); *see also* MTD at 11–13; *infra* at 8–10.  Plaintiffs cannot point to a single case that refused to enforce a SFRA under law similar to Pennsylvania.[2]  This Court should not be the first; the express terms of the SFRAs include no promise of in-person education, and that is fatal to Plaintiffs' claims.

### B.    Plaintiffs Fail to Allege Any Implied Contract.

Plaintiffs attempt to rehabilitate their breach claim as an "implied" contract claim, arguing that there is some *other* contract, in addition to the SFRA, that binds the parties.  That is wrong thrice over:  (1) Plaintiffs cannot assert an implied contract where an express contract covers the same matter; (2) they cannot allege an implied contract based on unilateral university publications; and (3) even if they could, they still fail to allege any contractual promise on the part of Penn State, as they have pointed only to aspirational marketing statements, which cannot form a contract as a matter of law.

**1.** Under blackletter law, there can be no "implied-in-fact contract . . . when . . . the parties have an express agreement dealing with the same subject."  *In re Penn Cent. Transp. Co.*, 831 F.2d at 1229.  That is why in *Ryan*, for instance, the court rejected implied-contract claims against Temple identical to Plaintiffs' here.  *Ryan*, 2021 WL 1581563, at *4.  Other courts, too, reject implied contract claims where an express contract exists.  *See, e.g.*, *Zwiker v. Lake Superior State Univ.*, No. 20-000070-MK, 2020 WL 8572097, at *5 (Mich. Ct. Cl., Aug. 31,

---

[2] Though Plaintiffs list a number of out-of-jurisdiction cases, almost none of them involved an express agreement between the parties, much less a public university and law like Pennsylvania's.  Plaintiffs suggest that, somehow, the law respecting student-university relationships is the same everywhere, Opp. at 10 n.6, but this is blatantly wrong. *See, e.g.*, *Crawford v. Presidents & Directors of Georgetown Coll.*, No. 20-cv-1141, 2021 WL 1840410, at *8 & n.7 (D.D.C. May 7, 2021) (noting differences among various state laws); *Smith*, 2021 WL 1539493, at *7 (noting that other jurisdictions often have different standards than Pennsylvania).  Regardless, it is not Penn State's burden to "prove" that Pennsylvania law is different from other jurisdictions.  It is Plaintiffs' burden to state claims under Pennsylvania law, and they have resoundingly failed to do so.

2020) (plaintiffs could not assert implied contract claims where their "express" financial responsibility agreements "cover[ed] the same subject matter").

Indeed, any other rule would be nonsensical, because to create a *different* contract would require *different* consideration.  But Plaintiffs already promised to pay tuition and fees in the SFRAs.  As Plaintiffs themselves stress, all contracts must include consideration from both parties.  So Plaintiffs' assertion that Penn State was bound to provide something in return for tuition and fees in some *other* contract (express or implied) cannot be right, because Plaintiffs must provide some different, *new* consideration that they have not already provided.  *See, e.g.*, *Socko v. Mid-Atl. Sys. of CPA, Inc.*, 126 A.3d 1266, 1275 (Pa. 2015) (consideration must be "new"; it cannot have been previously promised).

Plaintiffs barely even respond to these legal principles.  They minimally assert that "numerous courts have found" that there can be implied terms on top of an express agreement, but they have no support in Pennsylvania.  Opp. at 12.  They cite only *Smith*, which is distinct because it involves a private university (and dismissed identical claims for tuition, anyway), and *Hickey*, which they contend "acknowledg[ed]" that plaintiffs could assert "an implied contract claim arising from other evidence," Opp. at 12, but that is not true.  Pitt simply did not argue that implied contracts were precluded by the express contract.  *See* Univ. of Pittsburgh's Br. in Supp. of Mot. to Dismiss ("Pitt. Br.") at 7–16, *Hickey*, No. 2:20-cv-690, ECF No. 26, 2020 WL 9217927 (W.D. Pa. Apr. 27, 2021).  And in any event, Plaintiffs ignore that, in *Hickey*, the Court *rejected* identical implied-contract claims, *see* MTD at 13.

**2.**  Even if Plaintiffs could, as a legal matter, attempt to allege an implied contract respecting tuition and fees, they failed to do so.  As Penn State explained previously, Plaintiffs cannot rely on Penn State's unilateral marketing materials to supply the terms of any supposed

"contract."  Yet that is all Plaintiffs have.  *See* Compl. ¶¶ 38–41; Opp. at 4, 13 (asking the Court

to "look to other university publications").  Without those allegations, the Complaint contains no

plausible factual allegations that Penn State promised *anything* regarding in-person education.

Plaintiffs apparently recognize that they cannot succeed without reliance on these

unilateral materials, because they misstate the facts, the law, and their own Complaint, in an

attempt to shoehorn in these allegations.  To start, Plaintiffs refuse to accept Pennsylvania's

distinction between public and private universities.  A student's relationship with a public

university is not *inherently* contractual, *Tran*, 986 A.2d at 182–83, so a plaintiff "cannot base her

breach of contract claim on a public university's written policies and procedures," *Cohn v.

Pennsylvania State Univ.*, No. 19-2857, 2020 WL 2770684, at *7 (E.D. Pa. May 28, 2020); *see

also* MTD at 11–12.  This contrasts with "privately funded college[s]," where the relationship

"has traditionally been defined in this Commonwealth as strictly contractual in nature."  *Reardon

v. Allegheny Coll.*, 926 A.2d 477, 480 (Pa. Super. Ct. 2007).  In those circumstances, unilateral

university policies can contribute to a binding contract.  That is why, for instance, the *Ryan* court

held that "school publications are generally not a valid source of contractual obligations" with

respect to Temple, a state-related school, 2021 WL 1581563, at *9, but the *Smith* court relied on

such materials with respect to Penn, a *private* school, 2021 WL 1539493, at *6.[3]

Plaintiffs try a few desperate measures to avoid this basic point, but they all fail.  First,

they assert that Pennsylvania courts misunderstand Pennsylvania law, Opp. at 14, but to state that

argument is to refute it.  Plaintiffs do not provide a *single contrary authority*—both Pennsylvania

state courts and federal courts interpreting state law have unanimously determined that

---

[3] The *Hickey* Court examined similar materials, but again, only because Pitt did not argue otherwise, *see*
Pitt. Br., and it made no difference because the Court dismissed plaintiffs' claims anyway.

Pennsylvania treats public and private schools differently.  Plaintiffs also assert that Pennsylvania's law is bad policy, but that is neither relevant nor true.  Opp. at 15.  Public university students are protected by the guarantees of constitutional due process in the event they are prevented from taking classes, expelled, or denied a degree.  *Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 408 (M.D. Pa. 2013) ("In distinguishing between public universities and private colleges, [Pennsylvania courts] emphasize[] that due process safeguards students' rights at public universities whereas students enrolled in private colleges have contractual rights.").  Private school students, however, have no such protection, and must depend entirely on contract claims.  There is nothing unusual or untoward about these differing frameworks.  And it is not for this Court to disagree with the Pennsylvania courts on Pennsylvania law.

Plaintiffs also try to re-characterize Penn State's argument as having something to do with whether a school is "state-owned."  Opp. at 13.  But that phrase never appears in Penn State's briefing.  The key point is that Penn State is a *public* university subject to due process guarantees in its relationships with its students.  It is irrelevant whether Penn State is "owned" by the Commonwealth of Pennsylvania.  Indeed, one of the cases explaining the difference between public and private universities, *Cohn*, 2020 WL 2770684, itself involved *Penn State*.  It should give the Court an indication of the weakness of Plaintiffs' arguments that, after *specifically alleging* that Penn State is a "public research universit[y]," Compl. ¶ 12, Plaintiffs now attempt to declare that "it is not," Opp. at 14.

**3.**  As a final point, even considering the website pages and similar material, Plaintiffs have failed to allege an identifiable contractual promise that Penn State breached.  This Court already held that materially identical allegations failed with respect to Pitt, because "depictions and descriptions of student life" offer "nothing more than a generalized and non-specific

impression of typical student life." *Hickey*, 2021 WL 1630579, at *5. "Even in normal times . . . those materials offer only a subjective view of what campus life *may* be." *Id.* Likewise, the *Ryan* court held that, even if it were to consider them, none of these materials "make a specific and identifiable promise concerning in-person instruction." 2021 WL 1581563, at *9. That makes perfect sense: it cannot possibly be that vague, aspirational descriptions of Penn State campus life (e.g., that students "enjoy passing iconic buildings") form a *binding contract* with students. On the contrary, Plaintiffs were "given the chance to complete their semester and earn college credits," which is what they "paid for." *Hickey*, 2021 WL 1630579, at *5–6; *see also Smith*, 2021 WL 1539493, at *6 ("Advertisements and promotional materials become part of [a] contract only if they contain some language of commitment or some invitation to take action without further communication." (citation omitted)); *Gati v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*, 91 A.3d 723, 731 (Pa. Super. Ct. 2014) ("[T]he essence of the bargain between student and university is . . . that if he performs the required work in a satisfactory manner and pays his fees he will *receive the degree he seeks*." (emphasis added)).[4]

At bottom, Plaintiffs believe that their *desire* to have in-person class somehow creates a contract—they repeatedly assert that they "chose" in-person education. *E.g.*, Opp. at 1, 5, 9. But "claiming over and over" that they alleged a contract does not make it so. *Abbott v. Perez*, 138 S. Ct. 2305, 2327 n.19 (2018). Nowhere do Plaintiffs identify a promise made *by Penn State*, and Plaintiffs' "internal, subjective expectations" do not create a contract. *Ryan*, 2021 WL

---

[4] Even *Smith*, which allowed a fees claim to go forward against Penn (a private university), did so on the basis of specific promissory language. *Compare Smith*, 2021 WL 1539493, at *8 (fee policy listed on website stated that the "General Fee provides students with full access to . . . multicultural resource centers, student activities, [and] recreation and fitness. The Technology Fee covers technology-driven services, including technology-enabled spaces. The Clinical Fee supports the Student Health Service."), *with* Compl. ¶ 23 (alleging that a "Student Fee" supports "student-centered activities, services, facilities and recreation"). Plaintiffs' allegations do not even allege where this vague statement supposedly comes from.

1581563, at *7.  Courts must be "extremely reluctant to find that a contract existed when it is

based upon anything less than express or at the least clearly implied indications of intent."

*DiBonaventura v. Consol. Rail Corp.*, 539 A.2d 865, 868 (Pa. Super. Ct. 1988).  Plaintiffs have

not identified anything of the kind; their claim should be dismissed with prejudice.

## II.     PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS.

Plaintiffs' claim for unjust enrichment never gets out of the gate.  No doubt, a plaintiff

may plead an unjust enrichment claim in the "alternative," Opp. at 18, but not where there *is* a

contract that governs the subject matter.  The SFRA "not only precludes Plaintiffs from

advancing their claims for breach of implied contact, but for unjust enrichment as well."  *Ryan*,

2021 WL 1581563, at *11; *see also Smith*, 2021 WL 1539493, at *8; *Hickey*, 2021 WL 1630579,

at *5.  Indeed, even Plaintiffs agree there is a contract; that the parties dispute what is *in* the

relevant contract (i.e., is it the SFRA, some vague set of implied promises, or some combination

of the two) does not create space for an unjust enrichment claim.

Regardless, as a substantive matter, Plaintiffs do not even respond to Penn State's

arguments.  As explained previously in detail, Plaintiffs must establish that it was *unjust*, i.e.,

"unconscionable" for Penn State to retain the tuition and fees.  *Crossgates Realty, Inc. v. Moore*,

420 A.2d 1125, 1127–28 (Pa. Super. Ct. 1980).  Unjust enrichment requires a lack of equity; that

Plaintiffs did not obtain what they *expected* to obtain is no argument.  *See* MTD at 16–17.

Plaintiffs do not even assert otherwise, and with good reason: there was no injustice here.

Finally, although Plaintiffs argue that their claims do not sound in "educational

malpractice," they do not explain how their unjust enrichment claim avoids that pitfall.  Opp. at

16.  With respect to the contract claims, Plaintiffs are free to admit that they no longer challenge

their education as "deficient," Compl. ¶ 5, and then they must (as they fail to do) locate some

specific contractual promise that was breached.  But to make out an unjust enrichment claim,

Plaintiffs *have* to assert that the education they received was inferior.  Otherwise, as a matter of

principle, there cannot be injustice in Penn State retaining full tuition and fees.  But any such

claim must fail, as it would impermissibly require the Court to compare the quality of different

educational experiences.  *See, e.g.*, *Swartley v. Hoffner*, 734 A.2d 915, 918 (Pa. Super. Ct. 1999).

## III.   PLAINTIFFS HAVE ABANDONED ANY ARGUMENT FOR CONVERSION OR THAT BURGOS CAN STATE A CLAIM.

Plaintiffs entirely fail to respond to two of Penn State's arguments and thus abandon

them.  First, Plaintiffs nowhere challenge that in Pennsylvania, "[c]laims for conversion have

been consistently disallowed where such claims are based on the same facts as [a] contract

claim."  *McKesson Corp. v. Campbell*, No. 2579 EDA 2014, 2015 WL 7571502, at *9 (Pa.

Super. Ct. Nov. 24, 2015); *see* MTD at 18–19.  Second, they do not challenge Penn State's

arguments that Burgos, as the *parent* of a student, cannot enforce a contract or otherwise state a

claim.  *See* MTD at 9 n.10, 19 n.14.  "[A] plaintiff's failure to address a defendant's arguments

for dismissal" is treated "as an abandonment."  *Levy-Tatum v. Navient Sols., Inc.*, 183 F. Supp.

3d 701, 712 (E.D. Pa. 2016); *see also Yucis v. Sears Outlet Stores, LLC*, No. 18-15842, 2019 WL

2511536, at *4 n.4 (D.N.J. June 18, 2019) (citing examples).  Thus, the conversion claims and all

of Burgos's claims should be dismissed not only on the merits but also as abandoned.

## IV.   IN THE ALTERNATIVE, THE FORUM SELECTION CLAUSE REQUIRES DISMISSAL.

Although the foregoing is more than sufficient to dismiss the Complaint with prejudice in

its entirety, the forum selection clause provides an independent reason to do so.  The "party

resisting the application of a forum selection clause" bears "a heavy burden" to overcome the

presumption that the forum selection clause controls.  *Collins v. Mary Kay, Inc.*, 874 F.3d 176,

187 (3d Cir. 2017).  Plaintiffs do not come close to doing so.

Plaintiffs' primary (and erroneous) argument is that the SFRAs are not enforceable

contracts.  Opp. at 19.  As explained above, this contention is frivolous—the SFRAs are binding, bilateral contracts, through and through.  But even if there were some question about the SFRAs as a whole, the forum selection clause would *still* be enforceable, as a "forum-selection clause is understood not merely as a contract provision, but as a distinct contract in and of itself."  *Marra v. Papandreou*, 216 F.3d 1119, 1123 (D.C. Cir. 2000).  Thus, "the party seeking to avoid enforcement must demonstrate that the [forum selection clause] is invalid rather than merely claim the contract is invalid."  *Dan Lepore & Sons Co. v. Torcon, Inc.*, No. 20-06230, 2021 WL 1122178, at *3 (E.D. Pa. Mar. 24, 2021) (citation omitted).  And although Plaintiffs assert that the forum-selection clause lacks consideration, that makes no sense.  Opp. at 19–20.  The clause speaks in the broadest possible terms, not limiting itself to any party but requiring that "*[a]ny*" proceeding in "connection with this Agreement" be conducted in state court.  *Id.* (emphasis added).  "Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"  *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (citation omitted); *see also, e.g.*, *Woods v. Christensen Shipyards, Ltd.*, No. 04-61432-CIV, 2005 WL 5654643, at *4 (S.D. Fla. Sept. 23, 2005) ("Due to presence of the adjective 'any' and the broad coverage of the clause itself, the Court finds that the parties intended the forum selection clause to cover anyone … who brings a suit under or related to the Contract.").  Both sides thus granted the other party identical, valid consideration—the right to litigate in Centre County.

Plaintiffs next assert that the forum selection clause should not apply because their claims "fall outside the scope of the clause."  Opp. at 20.  But Plaintiffs seek the return of part of their tuition and fees—the very subject matter of the SFRAs—and the forum selection clause broadly applies to "*[a]ny* suit, action or proceeding arising in connection with this Agreement."  SFRA at 2 (emphasis added).  Courts expansively interpret the phrase "arising in connection" in forum

selection clauses.  *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp*., 119 F.3d 1070, 1074–76 (3d Cir. 1997).  Plus, the clause covers any "suit, action or proceeding," meaning it reaches even further; the Third Circuit has explicitly held—in disagreement with other courts—that using terms like "dispute" or "proceeding" (rather than, e.g., "claim") in a forum selection clause broadens the clause so far that it can be used as an affirmative defense against claims not directly based on the contract.  *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 67 (3d Cir. 2018).  Given the breadth of the language, all that is required is "some logical or causal connection" between Plaintiffs' claims and the "agreement."  *John Wyeth & Bro. Ltd.*, 119 F.3d at 1074 (quotation and citations omitted).  There can be no serious dispute that Plaintiffs' claims for tuition and fees are at least "connected" to their agreements to pay tuition and fees.[5]

Finally, Plaintiffs attempt to escape the forum selection clause by asserting that they do not seek to "enforce" the SFRAs.  Opp. at 20.  It would be a neat trick if Plaintiffs could avoid the imposition of a forum selection clause by ignoring the contract, but to allow as much "would permit avoiding a forum selection clause by simply pleading non-contractual claims in cases involving the terms of a contract containing the parties' choice of forum."  *Crescent Int'l, Inc. v. Avatar Cmty., Inc.*, 857 F.2d 943, 945 (3d Cir. 1988).  This would "run[] counter to the law favoring forum selection clauses."  *Id.*  It would be especially unjustified here, where Plaintiffs *pleaded* that Penn State was in "possession of all contracts" between the parties.  Compl. ¶ 60. They cannot reject the contract now because they dislike it.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

---

[5] Plaintiffs make the tautological argument that "[d]etermining the merits of Plaintiffs' claims requires no references to the SFRA," which is true only if you assume Plaintiffs' position.  Opp. at 20.  Any court that decides the merits of Plaintiffs' claims will have to make explicit holdings about the SFRA, one way or the other.

Dated:    June 4, 2021

Respectfully submitted,

*/s/ Aaron Healey*

Leon F. DeJulius, Jr. (Pa. 90383)
Aaron Healey (Pa. 310803)
JONES DAY
250 Vesey Street
New York, NY 10281
Phone: (212) 326-3939
Fax: (212) 755-7306
Email: lfdejulius@jonesday.com
Email: ahealey@jonesday.com

James S. Urban (Pa. 82019)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, Pennsylvania 15219
Phone: (412) 391-3939
Fax: (412) 394-7959
Email: jsurban@jonesday.com

Matthew A. Kairis
JONES DAY
2727 N. Harwood Street, Suite 600
Dallas, Texas 75201
Phone: (214) 969-3605
Fax: (214) 969-5100
Email: makairis@jonesday.com

*Counsel for The Pennsylvania State University*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Reply in Support of Defendant Penn State's Second Motion to Dismiss the First Amended Class Action Complaint was filed on June 4, 2021 via the Court's electronic filing system, which will deliver copies of the filings to counsel of record.

*/s/ Aaron Healey*

Aaron Healey

17